### A. A. Coons v. The State.

#### No. 3470.  Decided January 31, 1906.

**1.—Adultery—Evidence—Jurisdiction—Germane Testimony.**

Upon an appeal for conviction of adultery where the bill of exceptions did not show how long prior or subsequent to the date of the alleged adultery defendant and witness were working together at the same hotel in another county, there was no error in admitting this testimony, as the same was germane to the issue if the facts occurred immediately after or before the date alleged in the indictment.

**2.—Same—Evidence—Divorce—Hearsay.**

Where upon trial for adultery there was no affirmative statement that defendant had or did not have a divorce, and that his paramour testified that he was a married man, there was no error in admitting her further statement that she understood that defendant had been married but did not know whether he had a divorce or not.

**3.—Same—Evidence—Proof of Marriage.**

Upon a trial for adultery there was no error in permitting a State's witness to testify that he supposed defendant was a married man, that he was several years ago, that he lived with a woman understood to be his wife and had a family living there.

**4.—Same—Leading Question—Evidence.**

Upon a trial for adultery where a State's witness was asked whether some one told him what he should testify, to which he answered in the negative, there was no error.

**5.—Same—Evidence—Statement by Defendant—Widow.**

Upon a trial for adultery there was no error to permit a State's witness to testify that she understood that defendant's paramour was a widow, and that defendant had said so in a general conversation when witness was present.

**6.—Same—Evidence—Declarations by Defendant.**

Upon a trial for adultery there was no error in permitting a State's witness to testify that defendant had called his paramour by a pet name.

**7.—Same—Evidence—Circumstances—Acts of Defendant.**

Upon a trial for adultery there was no error in permitting the State's witness to testify that defendant insisted that his paramour should change her room from down stairs at the hotel where they were stopping, to an upstairs room near that of appellant's room.

**8.—Same—Sufficiency of Evidence.**

Where upon a trial for adultery the evidence showed a continuous living together of defendant, a married man, and his paramour, an unmarried woman, for two or three months, and that they had carnal intercourse upon one occasion, although controverted; also undue familiarity, etc., a verdict on an indictment for adultery was sustained.

Appeal from the County Court of Johnson. Tried below before Hon. J. D. Goldsmith.

Appeal from a conviction of adultery; penalty, a fine of $100.

The indictment charged defendant with unlawfully living together and having carnal intercourse with his paramour, he being a married man; and also unlawfully having habitual carnal intercourse without living together with said woman. The State's testimony showed that the defendant and his paramour traveled around together organizing lodges known as the Bankers Union of America, and that they boarded together at different hotels at different times, and were frequently seen together in the same room, and also seen walking together alone, and that he called her pet names in her presence, etc., this with the facts stated in the opinion sufficiently states the case.

No brief for appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of adultery, and fined $100.

The first bill of exceptions shows that the State propounded to Mrs. M. E. Shaw questions to which she replied: "That after she and defendant left Godley, and while engaged in the organization of the Bankers Union, they went to Glenrose, in Somervelle County, and remained there for about one month; and that she and defendant worked together in the organization of said lodge, and boarded at the same hotel." Appellant objected to the introduction of this testimony, because with reference to facts occurring in another county than that in which this case was filed, and being tried, and beyond the jurisdiction of the court, and was not therefore competent testimony as to defendant's guilt; that it was irrelevant, immaterial and prejudicial to the rights of defendant. The bill does not show how long prior or

subsequent to the date alleged in the. indictment defendant and witness were working together and boarding at the same hotel in another county. If it was immediately after or before the date alleged in the indictment, the testimony was germane and pertinent to the issue being tried. See Funderburg v. State, 33 Texas Crim. App., 392.

The third bill shows that Mrs. Shaw, on cross-examination, over his objections, testified, "That she understood A. A. Coons had been married, but did not know whether he had a divorce or not." Appellant objected on the ground that it was hearsay, not the best evidence—the record being the best evidence of the marriage and divorce of appellant; and urged the same objections as in the former bill. The fact that witness testified appellant was a married man is not hearsay, and the fact that she did not know whether or not he had a divorce could not have injured appellant, since there is no affirmative statement that he had or did not have a divorce.

The second bill shows that State's witness Zelesky was permitted to testify, that he suppossed appellant was a married man; that he was several years ago. He lived with a woman understood to be his wife, and had a family living there. Defendant at the time it was offered objected, because an opinion of witness, not the best evidence, remote and indefinite as to time. This testimony was admissible.

Bill No. 5 shows that the State's witness Clay Riley was asked: "Did Lee Hedges tell you what to testify?" Witness replied, "Lee Hedges did not tell me what to testify." Appellant objected because leading and suggestive, and hearsay. We see no objection to this testimony.

The sixth bill shows that State's witness, Lula Morse, testified "that she understood M. W. Shaw was a widow, and that she was a grass widow; that A. A. Coons had said she was a widow, and that he had said so at the table, in a general conversation, when witness was present." Appellant objected to this testimony on the ground that it was irrelevant and immaterial. This testimony was admissible.

Bill No. 7 shows that State's witness, Mrs. Lula Morse, over appellant's objection, testified that appellant's codefendant, Mrs. Shaw, was called "Muggins" by appellant. The objections are the same as urged to the other testimony. We see no error in admitting this evidence.

Bill number 9 shows that the State was permitted to prove by Mrs. Lula Morse, "That defendant insisted that Mrs. Shaw change her room from downstairs at the hotel where they were stopping, to an upstairs room, and near appellant's room." In our opinion there was no error in admitting this testimony.

The tenth ground of the motion for new trial insists that the evidence is not sufficient to support the conviction. The facts show a continuous living together in the same house (hotel or boarding house) for two or three months; and that on one occasion appellant and his codefendant, Mrs. Shaw, were seen upon the bed in the act of intercourse. It is true that this last fact is sharply controverted by the

testimony of witnesses who swear that prosecuting witness could not see parties lying upon the bed through the key-hole in the door. But this was a question for the jury. There was no relationship shown between appellant and his codefendant, such as warranted the very cordial and undue familiarity that the record shows. Defendant had previously been married to another, and the record shows no evidence of divorce. The testimony taken as a whole leads irresistibly to the conclusion that appellant is guilty as charged in the indictment. The judgment is affirmed.

*Affirmed.*